**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**SEBERT S. GRANT,**

                      **Plaintiff,**           **06 Civ. 5755 (JGK)**

        **- against -**               **MEMORANDUM OPINION**
                                               **AND ORDER**

**PATHMARK STORES, INC.,**

                      **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

       Plaintiff Sebert Grant ("Grant"), who appears pro se, brings this action against Pathmark Stores, Inc. ("Pathmark"). The plaintiff, who is an African-American of Jamaican national origin, alleges that the defendant discriminated against him on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"). Construed liberally, the plaintiff's complaint also alleges discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[1] The defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

---

[1] The defendant argues that the plaintiff's complaint does not allege claims under the NYSHRL and the NYCHRL. The plaintiff commenced the action using a form complaint provided by the Court's Pro Se Office. Although the form provided a box to check if the plaintiff believed Title VII was applicable, it did not provide a box to check regarding the NYSHRL and the NYCHRL. The form indicated that jurisdiction may also be appropriate on "any related claim under New York law." In <u>Batac v. Pavarini Constr. Co.</u>, No. 06 Civ. 0677, 216 Fed. Appx. 58, 61 (2d Cir. 2007) the court found that the plaintiff had asserted a claim under NYSHRL based on the form complaint. The court based its determination in part on the fact that the plaintiff had attached a copy of the charge he had filed with the New York State Division of Human

I.

The standard for granting summary judgment is well
established.  Summary judgment may not be granted unless "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477
U.S. 317 (1986); Gallo v. Prudential Residential Servs. Ltd.
P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them.  Its duty,
in short, is confined at this point to issue-finding; it does
not extend to issue-resolution." Gallo, 22 F.3d at 1224.  The
moving party bears the initial burden of "informing the district
court of the basis for its motion" and identifying the matter
that "it believes demonstrate[s] the absence of a genuine issue
of material fact." Celotex, 477 U.S. at 323.  The substantive

Rights to the form complaint and provided the date he filed the charge on the
form complaint.  There was no New York State charge attached to the complaint
here.  However, "the submissions of a pro se litigant must be ... interpreted
to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau
of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation
marks omitted).  The Court will therefore consider the plaintiff's claims as
arising also under the NYSHRL and the NYCHRL.  See also Watson v. Arts &
Entm't Television Network, No. 04 Civ. 1932, 2008 WL 793596 at *6 (S.D.N.Y.
Mar. 26, 2008).  It should be noted that the current form complaint provided
by the Pro Se Office of the Court does provide specific options to check if
the plaintiff is alleging claims under the NYSHRL and the NYCHRL.

law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994))).  In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment.  Local Civil Rule 56.2; see McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999); see also Vinson v. City of New York, 04 Civ. 7796, 2007 WL 965338, at *1-2 (S.D.N.Y. March 30, 2007).

In this case, the defendant served a copy of the Notice to Pro Se Litigant Opposing Motion for Summary Judgment dated November 24, 2008, advising the plaintiff of the procedures for responding to a motion of summary judgment, including the requirement that the plaintiff submit a response to the defendant's statement pursuant to this District's Local Rule 56.1 and to submit counter-evidence.  The plaintiff was also provided with a copy of Rule 56.

The plaintiff's submissions are plainly deficient.  Any allegedly undisputed fact not "specifically controverted" by the

4

opposing party's Rule 56.1 statement "will be deemed to be admitted." Local Rule 56.1(c); see also Dunkin' Donuts Inc. v. Barr Donut, LLC, 242 F. Supp. 2d 296, 298-99 (S.D.N.Y. 2003). Even undisputed facts, however, must be supported by the evidence presented.  See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

In response to the defendant's Local Rule 56.1 Statement of Undisputed Facts ("Def. 56.1 Stmt."), the plaintiff merely submitted an "Opposition," see Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl. Stmt."), that "ignores a number of defendants' record-based factual assertions and contains conclusory factual allegations with no citations to the record."  Sterbenz v. Attina, 205 F. Supp. 2d 65, 68 (E.D.N.Y. 2002).  "Where plaintiff has not responded to defendants' factual assertions-all of which are established by documentary evidence and/or the deposition testimony of plaintiff and [the plaintiff's] counsel-this Court has deemed those facts uncontroverted."  Id.; Vinson, 2007 WL 965338, at *2.

Therefore, for the purposes of this motion, the defendants' allegedly undisputed facts that are supported by the record and which the plaintiff has not specifically controverted with admissible evidence in accordance with Rule 56 and Local Rule 56.1 will be deemed admitted.

II.

The following facts are undisputed except where noted.

The defendant hired the plaintiff in October 1995 as a part-time clerk in the produce department of its Bay Plaza store.  (Def.'s 56.1 St. ¶ 3; Boscarino Aff. ¶ 3.)  Grant worked at the Bay Plaza store from October 1995 to March 2005 and November 2007 to July 2008, and in the defendant's Castle Center store from March 2005 to November 2007.  (Def.'s 56.1 St. ¶ 6; Bosc. Aff. ¶ 4.)  He worked as a produce clerk from October 1995 to June 1997 and August 2001 to January 2004, and worked as a maintenance employee from June 1997 to August 2001 and January 2004 to July 2008.  (Def.'s 56.1 St. ¶ 5; Bosc. Aff. ¶ 3.)  Pathmark promoted Grant to a full-time maintenance position on September 19, 2004, at which time he began to receive his full-time wage rate.  (Def.'s 56.1 St. ¶ 7; Bosc. Aff. ¶ 5.)

Because only 1,265 of the defendant's 6,564 employees have full-time status, promotion to full-time status is coveted by many part-time employees at Pathmark and granted to relatively few.  (Def.'s 56.1 St. ¶ 13; Bosc. Aff. ¶ 8.)  Some Pathmark full-time employees worked part-time for over 25 years before being promoted to full-time status.  (Def.'s 56.1 St. ¶ 13; Bosc. Aff. ¶ 8.)

Because of the defendant's staffing needs, no employees in the maintenance department in the Bay Plaza store were promoted

6

to full-time employment between the time Grant was hired,
October 1995, and the time he was promoted, September 2004.
(Def.'s 56.1 St. ¶ 14; Bosc. Aff. ¶ 9.)

Robert Hafner, who had had 16 years of prior experience
with Pathmark as a Produce Manager, was the only part-time
employee promoted to full-time in the Bay Plaza store while the
plaintiff worked in the produce department at that location.
(Def.'s 56.1 St. ¶ 14; Bosc. Aff. ¶ 9.)  Another Bay Plaza
produce employee, Jerry McArdle, Jr., was promoted to a full-
time position while Grant worked in the Bay Plaza maintenance
department.  (Def.'s 56.1 St. ¶ 19; Bosc. Aff. ¶ 13.)  Pathmark
considered McArdle an excellent employee, and he had prior
management experience in the produce department of two other
supermarkets.  (Def's 56.1 St. ¶ 19; Bosc. Aff. ¶ 13.)

In addition to staffing needs, Pathmark believes good
performance, including cooperation with management, ability to
get along with co-workers, and adherence to company policies is
an important criterion in determining whether a part-time
employee will be considered for promotion to a full-time
position.  (Def.'s 56.1 St. ¶ 15; Bosc. Aff. ¶ 11.)  The
defendant considered Grant's overall performance spotty for much
of his tenure with Pathmark.  (Def.'s 56.1 St. ¶ 16; Bosc. Aff.
¶ 12.)  Grant was disciplined and issued various disciplinary
notices for such infractions as failing to come to work when

scheduled and not advising his manager, theft of time, insubordination, disputes with co-workers and failure to follow direction. (Def.'s 56.1 St. ¶ 16.; Ex. B.) Pathmark believes Grant's unsatisfactory conduct rendered him ineligible for consideration for promotion to full-time status for much of his tenure with Pathmark. (Def.'s 56.1 St. ¶ 16.; Bosc. Aff. ¶ 12.) Grant's eventual promotion resulted from his improved performance, a change in the staffing needs in the Bay Plaza store and the plaintiff's persistence in his requests for full-time work. (Def.'s 56.1 St. ¶ 16; Bosc. Aff. ¶ 12.)

The plaintiff's full-time wage rate was calculated pursuant to a formula set forth in the collective bargaining agreement between Pathmark and Local 1500 of the United Food and Commercial Workers, which he had joined in November 1995.[2] (Def.'s 56.1 St. ¶¶ 4, 8; Ex. A.) Because the formula's result, $12.50, was lower than the wage the plaintiff was already receiving, $13.05, the defendant gave the plaintiff an additional $.20 per hour in recognition of his promotion to full-time, resulting in a promotional rate of $13.25 per hour. (Def.'s 56.1 St. ¶ 9; Bosc. Aff. ¶ 6.)

---

[2] His nine years as a part-time employee were divided by 2 to reach 4.5 years, and the plaintiff was then credited with $15.00 for each six months within that 4.5 year-period, or 4.5 x 2 x $15.00, which equals $135.00. The $135.00 was then added to the $365.00 minimum weekly rate for maintenance employees set forth in Schedule K of the CBA for a total of $500.00 per week. Dividing that $500.00 weekly wage by 40 hours results in an hourly wage of $12.50.

8

The plaintiff believed that his full-time wage rate was calculated incorrectly and discussed his belief with Ed Cordero, his Union representative. (Def.'s 56.1 St. ¶ 11; Pl. Dep. at 89-90.) After Cordero discussed Grant's rate with John Padian, then Pathmark's Director of Human Resources, Cordero advised Grant that his rate had been calculated correctly. (Def.'s 56.1 St. ¶ 12; Pl. Dep. at 92-93.)

At the time he was promoted to a full-time position in September 2004, Grant was advised by Pathmark's area supervisor, Ian Loudon, that Pathmark expected him to discontinue his practice of "hustling rides" outside of the Bay Plaza store, in other words, offering to drive Pathmark's customers home with their groceries in exchange for payment. (Def.'s 56.1 St. ¶ 21; Pl. Dep. at 50-51.) Grant agreed to stop hustling rides at that time. (Def.'s 56.1 St. ¶ 21; Pl. Dep. at 370-71.)

On March 24, 2005, Grant was discharged for hustling rides outside of the Bay Plaza store on March 22, 2005. (Def.'s 56.1 St. ¶ 22; Ex. C.) In a March 24th meeting with a Union representative, a Pathmark Human Resources employee, store management and a Pathmark Security Department employee, the plaintiff admitted to having hustled rides. (Def.'s 56.1 St. ¶ 22; Pl. Dep. at 321-22, 366.)

After a discussion among Grant, Pathmark and the Union on March 24, 2005, Grant's discharge was converted to a one-week

9

suspension because it was unclear whether the plaintiff was taxiing customers on company time or on his own time. (Def.'s 56.1 St. ¶ 23; Bosc. Aff. ¶ 16.)

On July 19, 2005, Grant was suspended for leaving the Castle Center store for approximately twenty five minutes to get a cup of coffee after having punched in and while on company time and returning not dressed in accordance with Pathmark's dress code. (Def.'s 56.1 St. ¶ 24; Ex. D.) Grant admitted that he punched in on that day, got into his car, drove to get a cup of coffee and returned not wearing his Pathmark uniform, but he claimed that he spent only ten minutes doing so. (Def.'s 56.1 St. ¶ 25; Pl. Dep. at 187, 216, 219-20.)

Grant claimed that in or about October 2005, Bruce Rozanski, Grocery Manager in Pathmark's Castle Center store, threatened him. (Def.'s 56.1 St. ¶ 26; Complaint ¶ 8.) Grant also claimed that several days after this incident, Rozanski used a racial epithet against him. (Pl. Dep. At 245-46.) After Grant complained about the Rozanski's threat to store management, Rozanski was transferred to a Pathmark store in Manhattan within two weeks. (Def.'s 56.1 St. ¶ 26; Pl. Dep. at 249.)

On March 29, 2006, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and national origin. (Def.'s 56.1

St. ¶ 27; Ex. 3.)  On July 3, 2006, the EEOC dismissed the charge because the EEOC's investigation of Grant's allegations did not establish any statutory violation and issued Grant a Notice of Right to Sue.  (Def.'s 56.1 St. ¶ 28; Ex. 4.)

III.

As a pro se pleading, the plaintiff's complaint is construed liberally.  Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir. 1991).  Grant alleges that the defendant discriminated against him when it did not promote him to full-time status until 9 years after he began working and when it gave him only a $.20 raise upon promotion.  He also alleges discrimination in connection with his March 24, 2005 and July 19, 2005 suspensions and Rozanski's alleged threat against him in October 2005.

To establish a prima facie case for employment discrimination under Title VII, a plaintiff must generally show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See also St. Mary's Honor Ctr.

11

V. Hicks, 509 U.S. 502, 506 (1993); James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000); see also Garvin v. Potter, No. 00 Civ. 6789, 2005 WL 957402, at *12 (S.D.N.Y. Apr. 25, 2005).

If the plaintiff establishes a prima facie case of employment discrimination, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.  See McDonnell Douglas, 411 U.S. at 802-03; St. Mary's Honor Ctr., 609 U.S. at 506-07; James, 233 F.3d at 154.

After the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981); Fisher v. Vassar Coll., 114 F.3d 1332, 1336 (2d Cir. 1997); see also Darrell v. Consol. Edison Co. of New York, Inc., No. 01 Civ. 8130, 2004 WL 1117889, at *8 (S.D.N.Y. May 18, 2004).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Burdine, 450 U.S. at 253; see also Reeves v. Sanderson Plumbing Co., 530 U.S. 133, 143 (2000); Darrell, 2004

WL 1117889, at *8.  The Court of Appeals for the Second Circuit
has instructed that in determining whether the plaintiff has met
this burden, a court is to use a "case by case" approach that
evaluates "the strength of the plaintiff's prima facie case, the
probative value of the proof that the employer's explanation is
false, and any other evidence that supports [or undermines] the
employer's case." James, 233 F.3d at 156 (quoting Reeves, 530
U.S. at 148-49); see also Darrell, 2004 WL 1117889, at *8.
Although summary judgment must be granted with caution in
employment discrimination actions "where intent is genuinely in
issue, . . . summary judgment remains available to reject
discrimination claims in cases lacking genuine issues of
material fact." Chambers, 43 F.3d at 40; see also Darrell, 2004
WL 1117889, at *8; Alston v. New York City Transit Auth., No. 02
Civ. 2400, 2003 WL 22871917, at *4-5 (S.D.N.Y. Dec. 3, 2003).

The plaintiff's discrimination claims under the NYSHRL are
subject to the same standards of proof as claims under Title
VII.  See, e.g., Cruz v. Coach Stores, 202 F.3d 560, 565 n.1 (2d
Cir. 2000).  However, analysis of discrimination claims under
the NYCHRL differs somewhat from the analysis under Title VII.
See Fleming v. MaxMara U.S.A. Inc., No. 06 Civ. 6357, 2009 WL
1910946, at *13 (E.D.N.Y. June 30, 2009).

Although the NYCHRL prohibits employment discrimination on
the basis of race and national origin, following New York City's

13

Local Civil Rights Restoration Act of 2005, courts have interpreted the NYCHRL as requiring "an independent liberal construction analysis in all circumstances, even where State and federal civil rights laws have comparable language. The independent analysis must be targeted to understanding and fulfilling what the statute characterizes as the [NYCHRL's] 'uniquely broad and remedial' purposes, which go beyond those of counterpart State or federal civil rights laws." Cretella v. Liriano, No. 08 Civ. 1566, 2009 WL 1730993, at *11 (S.D.N.Y. June 17, 2009) (quoting Williams v. The New York City Housing Authority, 872 N.Y.S. 2d 27, at *31 (N.Y. App. Div. 2009)). "[I]nterpretations of State or federal provisions worded similarly to [NYCHRL] provisions may be used as aids in interpretation only to the extent that the counterpart provisions are viewed 'as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise', and only to the extent that those State- or federal-law decisions may provide guidance as to the 'uniquely broad and remedial' provisions of the local law." Cretella, 2009 WL 1730993, at *11 (quoting Williams, 872 N.Y.S. 2d 27, at *31 (internal citations omitted)).

Because the NYCHRL claims are subject to a different standard than the Title VII and NYSHRL claims, the City law claims will be addressed separately.  Unless explicitly stated

14

otherwise, the following discussion will deal only with the plaintiff's Title VII and NYSHRL claims.

A.

1.

The plaintiff alleges that Pathmark discriminated against him on the basis of his race and national origin when it failed to promote him to a full-time position until September 19, 2004, after he had worked for approximately 9 years as a part-time employee.

The defendant argues that the Title VII claim is time barred.  "In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days."  Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993); see also 42 U.S.C. § 2000e-5(e); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).  Grant filed his charge of discrimination with the EEOC on March 29, 2006.  (Def.'s 56.1 St. ¶ 27; Wexler Aff. Ex. 3.)  The defendant contends that the lawsuit can only encompass actions that occurred during the preceding 300 days, which began on June 2, 2005.  Because the plaintiff was promoted on September 19, 2004,

the defendant argues that the alleged discriminatory failure to promote would have occurred before that date and is time barred.

In response, the plaintiff argues that pro se litigants should not be held to the applicable time limits.  However, Title VII time limitations are not extended for pro se litigants.  See, e.g., Alleyne v. Four Seasons Hotel – New York, No. 09 Civ. 3432, 2001 WL 135770, at *6 (S.D.N.Y. 2001) (300-day statute of limitations on a Title VII claim applied to case involving a pro se plaintiff); Sanchez v. Nat'l Cleaning Co., 11 F. Supp. 2d 453, 455 (S.D.N.Y. 1998) (dismissing pro se plaintiff's complaint as untimely where filed 2 days after a 90-day time limit).  Therefore, Grant's Title VII claims are subject to Title VII time limits.

The plaintiff also argues that his Title VII failure to promote claim is timely because the discriminatory treatment constituted a "continuing violation."  Under the continuing violation doctrine, if a plaintiff files a discrimination charge with the EEOC "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993); see also Connecticut Light & Power Co. v. Sec'y of the United States Dep't of Labor, 85 F.3d 89, 96 (2d Cir. 1996);

16

Cornwell v. Robinson, 23 F.3d 694, 703-04 (2d Cir. 1994)

(abrogated in part on other grounds, Nat'l R.R. Passenger Corp.

v. Morgan, 536 U.S. 101 (2002)); O'Malley v. GTE Serv. Corp.,

758 F.2d 818, 821-22 (2d Cir. 1985). The continuing violation

doctrine typically applies to situations where there are

specific discriminatory policies or mechanisms, such as

discriminatory seniority lists or employment tests. See Van

Zant, 80 F.3d at 713; Cornwell, 23 F.3d at 704; Lambert, 10 F.3d

at 53. Ordinarily, "multiple incidents of discrimination, even

similar ones, that are not the result of a discriminatory policy

or mechanism do not amount to a continuing violation." Lambert,

10 F.3d at 53; see also Quinn v. Green Tree Credit Corp., 159

F.3d 759, 766 (2d Cir. 1998); Van Zant, 80 F.3d at 713.

Using the continuing violation doctrine, the plaintiff

argues that the alleged failure to promote is linked to the

setting of his wage as well as to the March 2005 and July 2005

terminations.  Because the July 2005 termination occurred within

the 300-day period prior to Grant's filing with the EEOC, if the

failure to promote and the July 2005 termination are part of a

continuing violation, then the failure to promote claim would

not be time barred under Title VII.

However, courts have consistently held that failures to

promote are discrete acts that do not constitute a continuing

violation.  See Morgan, 536 U.S. at 114; see also Lightfoot v.

17

Union Carbide Corp., 110 F. 3d 898, 907 (2d Cir. 1997) (alleged demotions and denials of pay-grade increases); Aggarwal v. New York City Health and Hosp. Corp., No. 98 Civ. 5063, 2000 WL 172787, at *4 (S.D.N.Y. Feb.10, 2000) (repeated failure to promote did not constitute continuing violation); Meckenberg v. New York City Off-Track Betting, 42 F. Supp. 2d 359, 371-72 (S.D.N.Y. 1999) (repeated failure to promote); Nicholas v. NYNEX, Inc., 974 F. Supp. 261, 268-69 (S.D.N.Y. 1997) (repeated failure to promote); Pauling v. Sec'y of the Interior, 960 F. Supp. 793, 801-02 (S.D.N.Y. 1997) ("Demotion, failure to promote, and termination have all been deemed discrete acts."). Accordingly, the defendant's failure to promote the plaintiff prior to September 19, 2004 was a discrete act that does not constitute part of a continuing violation. Because the failure to promote occurred before the 300-day period prior to Grant's filing of his EEOC complaint on March 29, 2006, the plaintiff's Title VII failure to promote claim is time barred.

2.

Grant's failure to promote claim under the NYSHRL is not time barred because the three-year statute of limitations under the NYSHRL would allow the plaintiff to bring claims for actions occurring on or after March 29, 2003, and the plaintiff was not promoted until September 19, 2004.

18

However, the plaintiff cannot show a prima facie case of employment discrimination based upon his failure to be promoted prior to September 19, 2004.

To establish a Title VII prima facie case based on an alleged discriminatory failure to promote, the plaintiff must demonstrate that: 1) he is a member of a protected class; 2) he applied and was qualified for a job for which the employer was seeking applicants; 3) he was rejected for the position; and 4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998) (citing McDonnell Douglas, 411 U.S. at 802).

Grant has failed to present evidence from which a reasonable juror could conclude that race or national origin was a motivating factor in the defendant's failure to promote the plaintiff prior to September 19, 2004. An employee bringing a Title VII failure to promote claim must allege that "he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." Brown, 163 F.3d at 710. Here, the plaintiff has failed to allege that he ever applied for a specific full-time position and was rejected.

Moreover, Pathmark has presented legitimate, non-discriminatory reasons for its failure to promote Grant at an

earlier date. Because of the defendant's cost-saving and staffing needs, promotions from part-time to full-time were rare during the 9 years the plaintiff worked at Pathmark before he was promoted.  Between October 1995, when Grant was hired, and his September 2004 promotion, no maintenance employees received promotions to full-time employment in the Bay Plaza store, and only two produce employees in the store received promotions. Both of those employees, McArdle and Hafner, had years of prior management experience at either Pathmark or other supermarkets. In addition, during much of the plaintiff's part-time employment at Pathmark, his disciplinary record rendered him ineligible for promotion to full-time status.  Grant has presented no evidence suggesting that these reasons are pretextual.  See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]f the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate"); Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999) (affirming summary judgment dismissing plaintiff's discrimination claims because plaintiff provided no evidence that illegal discriminatory motive played motivating role in decision to deny plaintiff's promotion, and evidence overwhelmingly supported defendant's explanation of legitimate, nondiscriminatory reason); Smith v. American Express Co., 853

F.2d 151, 154-55 (2d Cir. 1988) (affirming summary judgment
because of plaintiff's failure to present more than conclusory
allegations that employer's proffered nondiscriminatory
rationale for denial of promotion was pretext).

Summary judgment is therefore granted dismissing the
plaintiff's claims of discriminatory failure to promote under
Title VII and the NYSHRL.


B.

The plaintiff alleges that Pathmark discriminated against
him upon his promotion to full-time employment when it gave him
a $.20 raise, which was lower than the raises other employees
had received.

The defendant argues that the Title VII claim of unequal
pay is time barred.  Pathmark contends that Grant's full-time
wage rate was set on September 19, 2004, more than 300 days
before the plaintiff filed his charge with the EEOC.  However,
The Lilly Ledbetter Fair Pay Act, signed into law on January 29,
2009, provides that "an unlawful employment practice occurs,
with respect to discrimination in compensation[,] . . . each
time wages, benefits, or other compensation is paid . . . ."
Pub. L. No. 111-2, amending 42 USC § 2000e-5[e].  The Act is
retroactive and applies "to all claims of discrimination in
compensation under Title VII . . . that are pending on or after"

May 28, 2007.  Id. § 6.  Under the Act, Grant's Title VII
discriminatory pay claim is not time barred because the
plaintiff continued to work full-time and receive wages
throughout the 300 day period before he filed his complaint.
Each payment during that period would be an appropriate basis
for his claim, even though the setting of his wage rate occurred
prior to that period.  See Aspilaire v. Wyeth Pharm., Inc., No.
07 Civ. 0952, 2009 WL 988648, at *20 (S.D.N.Y. March 30, 2009).

     However, no reasonable juror could find that the plaintiff
has provided sufficient evidence of discriminatory pay.  In
order to establish a prima facie case of discriminatory
disparate pay under Title VII, a plaintiff must show that: (1)
the plaintiff was a member of a protected class, (2) the
plaintiff was qualified for the position in question, (3) the
plaintiff was paid less than others who were not in the
protected class, and (4) the employer's decision occurred under
circumstances that raise an inference of discrimination.  See
Belfi v. Prendergast, 191 F.3d 129, 140 (2d Cir. 1999).
Regardless of whether Grant can satisfy the first three
elements, the plaintiff has failed to present any evidence that
the decision about the plaintiff's pay raises any inference of
discrimination.

     The plaintiff's full-time wage rate was calculated pursuant
to a race-neutral formula set out in a collective bargaining

agreement between Pathmark and Local 1500 of the United Food and
Commercial Workers, which plaintiff joined shortly after he was
hired in October 1995.  Grant was earning $13.05 per hour at the
time of his promotion, which was already above the formula's
rate of $12.50.  Although Pathmark could have left Grant's rate
at $13.05, the defendant gave the plaintiff an additional $.20
per hour in recognition of his promotion to full-time
employment, resulting in a promotional rate of $13.25 per hour.
The plaintiff has provided no evidence that his rate was
calculated incorrectly.

   The plaintiff argues that his rate was discriminatory
because a white male maintenance employee in the Castle Center
store, Richard Agostini, received a $1.225 per hour raise upon
his promotion to full-time. (Def.'s 56.1 St. ¶ 10.)  However,
Agostini's wage increase was calculated pursuant to the same
race-neutral formula used to calculate Grant's wage, which tends
to produce higher raises when the initial salary is lower.
(Def.'s 56.1 St. ¶ 10.)  Because Agostini had worked for a
shorter time before promotion than Grant and had a lower pre-
promotion salary than the plaintiff, the formula gave Agostini a
higher raise than the plaintiff's.[3]  Agostini's final hourly wage

---

[3] Agostini had spent 4 years as a part-timer before he was promoted and was
earning $9.40 per hour at the time of his promotion.  In accordance with the
formula, he was given half credit for his 4 years of part-time employment,
producing 2 years, multiplied by $15.00 for each 6 months in the 2-year
period, or $15.00 x 4, which equals $60.00.  The $60.00 was added to the

of $10.625 was still significantly lower than Grant's, and Agostini was not given any bonus rate increase beyond the formula's result. (Def.'s 56.1 St. ¶ 10.) Grant has not disputed the calculation of Agostini's or any other employee's wage rate, and has provided no evidence that the setting of his own wage was discriminatory.

The defendant argues that the plaintiff's New York law discriminatory pay claim is pre-empted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because resolution of the claim requires interpretation of the wage formula set out in the CBA between Pathmark and the Union.  But because the plaintiff has failed to show discrimination in connection with the setting of his wage, there is no need to reach the question of whether his discriminatory pay claim under New York law is pre-empted.  Any claim under the NYSHRL fails on the merits for the same reasons that his Title VII claim fails. Summary judgment is therefore granted dismissing the plaintiff's Title VII and NYSHRL claims of discriminatory pay.

To the extent that the plaintiff argues that Pathmark retaliated against him for complaining about discrimination by lowering his raise, summary judgment is granted dismissing this claim because the plaintiff has provided no evidence that the

_____

$365.00 minimum wage for maintenance employees, equaling $425.00 per week. Dividing that total by 40 hours yielded an hourly rate of $10.625.

defendant's non-discriminatory reason for the setting of his wage is pretextual.  See, e.g., Marshall v. NYC Bd. Of Elections, No. 07 Civ. 4561, 2009 WL 928083, at *2 (2d Cir. April 7, 2009) (affirming summary judgment because plaintiff failed to show that defendant's non-discriminatory reasons for allegedly retaliatory actions were pretextual).

C.

1.

The plaintiff argues that Pathmark discriminated against him when it suspended him on March 24, 2005 for hustling rides outside the Bay Plaza store on March 22, 2005.  Pathmark initially decided to discharge him, but changed his discipline to a one-week suspension.  The plaintiff asserts that Pathmark gave him harsher discipline than it gave other employees who hustled rides because of his race and national origin.

The defendant argues that the Title VII claim regarding Grant's discipline is time barred because it occurred more than 300 days before the plaintiff filed his complaint with the EEOC. Grant contends that the disciplinary action was part of a continuing violation.  However, as with failures to promote, "[c]ompleted acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature."

25

Malarkey v. Texaco, 559 F. Supp. 117, 121 (S.D.N.Y. 1982),
aff'd, 704 F.2d 674 (2d Cir. 1983) (per curiam); see also
Morgan, 536 U.S. at 114.  Accordingly, Pathmark's decision to
suspend Grant after initially deciding to terminate his
employment is a discrete act for the purpose of a Title VII
discrimination claim.  Therefore, the plaintiff's Title VII
discrimination claim regarding his March 24, 2005 suspension is
time barred.

Because the NYSHRL allows claims based upon actions taken
up to three years before the filing of the complaint with the
EEOC, the plaintiff's claims under New York law would not be
time barred.  However, the plaintiff has presented no evidence
of discrimination based on his March 24, 2005 discipline.

Upon his promotion in September 2004, the plaintiff agreed
to stop his practice of hustling rides.  The plaintiff did
hustle rides in March 2005 and was disciplined for his conduct.
Although he argues that other employees who hustled rides did
not receive discipline, the plaintiff has not identified a
single person who received more favorable treatment after having
been found to be hustling rides.  See, e.g., Billue v. Praxair,
Inc., No. 07 Civ. 2359, 2008 WL 4950991, at *1 (2d Cir. Nov. 20,
2008) (affirming summary judgment because plaintiff failed to
show other employees who had broken same rules as he had and
received lesser discipline).  A one-week suspension based on the

26

plaintiff's hustling of rides after promising not to do so does
not raise an inference of discrimination.  Moreover, the
plaintiff has not presented any evidence that the defendant's
proffered reason regarding his suspension is pretextual.

Summary judgment is therefore granted dismissing the
plaintiff's Title VII and NYSHRL claims regarding his March 24,
2005 discipline.


                                2.

The plaintiff argues that Pathmark discriminated against
him because of his race and national origin when it suspended
him on July 19, 2005.  However, Grant has presented no evidence
that discrimination was a motivating factor in his suspension.
The plaintiff admitted to leaving the Castle Center store while
on company time and returning without wearing his Pathmark
uniform.  Although the plaintiff argues that he was only gone
for 10 minutes, he still admitted to leaving while on company
time.  Grant provides no evidence that other employees who had
violated that company rule were treated more favorably.  A
suspension based upon the plaintiff's leaving while on company
time does not raise an inference of discrimination.

Moreover, Grant provides no evidence that the defendant's
proffered reason for his suspension is pretextual.  There is no
evidence that the level of discipline he received was influenced

                                27

by his race or national origin.   Although the plaintiff alleges
that George McCann, a Pathmark grocery manager, disliked him and
was involved in the decision to suspend him (Pl. Opp. 2), this
allegation is not supported by any facts in the record.   In
addition, any involvement by McCann would not undercut the
legitimacy of the non-discriminatory reason for the discipline
or support an inference that discrimination was a motivating
factor in the discipline.

Accordingly, summary judgment is granted dismissing the
plaintiff's Title VII and NYSHRL discrimination claims based
upon his July 19, 2005 suspension.


D.

The plaintiff claims that in or about October 2005, Bruce
Rozanski, Grocery Manager in the Castle Center store, threatened
the plaintiff, and that several days after the threat, Rozanski
used a racial epithet against him.

Grant fails to show a prima facie case of discrimination in
connection with this incident because Rozanski's alleged actions
did not constitute an adverse employment action.   Rozanski's
alleged threat and use of a racial epithet did not result in "a
materially adverse change in the terms and conditions of
employment."   See Torres v. Pisano, 116 F.3d 625, 640 (2d Cir.
1997).   The plaintiff's wages, hours and responsibilities were

28

not affected.   Moreover, Rozanski was transferred to another
store within two weeks of his alleged threat and had no further
interaction with the plaintiff thereafter.

To the extent that the plaintiff alleges a hostile work
environment based upon Rozanski's alleged actions, Grant fails
to show a prima facie case of hostile work environment under
Title VII and the NYSHRL.  To establish a prima facie case of
hostile work environment, a plaintiff must show: (1)
discriminatory harassment that was "sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment," and (2) a specific basis
exists for imputing the objectionable conduct to the employer.
Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997);
see also Garvin v. Potter, 367 F. Supp. 2d 548, 566 (S.D.N.Y.
2005).  The first element of the prima facie case must be
established by a showing that "the workplace was so severely
permeated with discriminatory intimidation, ridicule, and insult
that the terms and conditions of [the plaintiff's] employment
were thereby altered."  Alfano v. Costello, 294 F. 3d 365, 373
(2d Cir. 2002).  Isolated acts, unless very serious, do not meet
the threshold of severity or pervasiveness.  Brennan v. Metro.
Opera Assn., 192 F. 3d 310, 318 (2d Cir. 1999).  "Instead of
sporadic racial slurs, there must be a steady barrage of
opprobrious racial comments."  Whidbee v. Garzarelli Food

Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (quoting
Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997))
(internal modifications and quotation marks omitted).

Besides Rozanski's single alleged threat and one-time use
of a racial epithet, the plaintiff has not alleged any incidents
in which he was threatened or subjected to racial epithets.  In
addition, Pathmark promptly addressed the matter and transferred
Rozanski within two weeks.  The incidents about which the
plaintiff complains do not rise to the level of severity and
pervasiveness required to prove a prima facie case of hostile
work environment under Title VII and the NYSHRL.  See Daniels v.
Health Ins. Plan of Greater New York, 02 Civ. 6054, 2007 WL
27115, at *5-6 (S.D.N.Y. Jan. 4, 2007).  Summary judgment is
therefore granted dismissing the plaintiff's Title VII and
NYSHRL claims regarding Rozanski's actions.


IV.

The plaintiff's complaint could be construed to allege
claims of race discrimination, retaliation and hostile work
environment under the NYCHRL.  The Court declines to exercise
supplemental jurisdiction over these claims because it "has
dismissed all claims over which it has original jurisdiction."
28 U.S.C. § 1367(c)(3); see also Valencia ex rel. Franco v. Lee,
316 F.3d 299, 304-06 (2d Cir. 2003).  It is particularly

appropriate to decline to exercise jurisdiction over the NYCHRL
claims.  The defendant disputed whether the claims were even
asserted in the complaint and did not brief the different
standards that apply to NYCHRL claims in light of New York
City's Local Civil Rights Restoration Act of 2005.  The
plaintiff in his papers did not explain his claims under the
NYCHRL.  The NYCHRL claims are therefore dismissed without
prejudice.


                          CONCLUSION

     For the reasons explained above the defendant's motion for
summary judgment regarding the Title VII and NYSHRL claims is
granted and the claims are dismissed.  The Court declines to
exercise jurisdiction over any NYCHRL claims and those claims
are dismissed without prejudice.  The Court has carefully
considered all the arguments presented by the parties.  Any
argument not expressly discussed above is either moot or without
merit.  The Clerk of the Court is directed to enter judgment
dismissing the complaint and closing the case.

The Clerk is also directed to close all pending motions.

SO ORDERED.

Dated:     New York, New York
           July 29, 2009

                                    John G. Koeltl
                              United States District Judge